### HULAHAN v. UNITED STATES.
### No. 15000.

United States Court of Appeals
Eighth Circuit.

July 20, 1954.

C. Arthur Anderson, St. Louis, Mo. (Charles M. Shaw and Wayne C. Smith, Jr., Clayton, Mo., filed a separate reply brief), for appellant.

Forrest Boecker, Sp. Asst. to the U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., St. Louis, Mo., and Tom DeWolfe, Sp. Asst. U. S. Atty. Gen., were with him on the brief), for appellee.

Before SANBORN, JOHNSEN and COLLET, Circuit Judges.

SANBORN, Circuit Judge.

Paul H. Hulahan, upon his plea of not guilty to an indictment containing eight counts, was tried by a jury and convicted. The statute upon which each of the counts was based is § 1951, Title 18 U.S.C. That statute, so far as pertinent, provides:

"Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by * * * extortion or attempts or conspires so to do, * * * shall be fined not more than $10,000 or imprisoned not more than twenty years, or both."

The statute defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." "Commerce," as defined in the statute, "means * * * all commerce between any point in a State * * * and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction."

The jury found Hulahan guilty upon each of the eight counts of the indictment. The District Court imposed a sentence of twelve years imprisonment and a fine of $1,000 upon each count, the sentences of imprisonment to be served concurrently. Hulahan has appealed. He contends that the court erred in denying his motion for a judgment of acquittal made before, and renewed after, verdict. He also contends that there was error in the court's charge to the jury.

It is elementary that in reviewing the question of the adequacy of the evidentiary basis for a verdict of guilty, this Court must take that view of the evidence which is most favorable to the Government and give to the Government the benefit of all inferences which reasonably can be drawn from such evidence. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; Neal v. United States, 8 Cir., 114 F.2d 1000, 1002; Hansbrough v. United States, 8 Cir., 156 F.2d 327. This is saying no more than that a jury verdict, whether factually right or wrong, is conclusive upon this Court if sustained by substantial evidence or by permissible inference drawn therefrom. Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 444. With the credibility of witnesses or weight of evidence this Court can have no concern. Glasser v. United States, supra, at page 80 of 315 U.S., at page 469 of 62 S.Ct.; United States v. Compagna, 2 Cir., 146 F.2d 524, 526.

When the defendant in a criminal case is convicted upon several counts of an indictment, the judgment will be sustained if he was properly convicted under any count which is good and is sufficient in itself to support the judgment. Gantz v. United States, 8 Cir., 127 F.2d 498, 501; Bowen v. United States, 8 Cir., 153 F.2d 747, 748–749; Hansbrough v. United States, 8 Cir., 156 F.2d 327, 328. A lawful conviction under a single count of the indictment in this

case will sustain the judgment appealed from.

Hulahan, however, contends that the evidence of the Government was insufficient to sustain his conviction under any count of the indictment because the evidence failed to show that he was, within the meaning of the statute, guilty of extortion or of any attempt or conspiracy to extort, and that the evidence also failed to prove that what he was shown to have done had affected, or could have affected, interstate commerce.

Is is unnecessary to state in detail the charges contained in each of the counts of the indictment, or the evidence adduced in support of each of them.

Stated generally and briefly, the charges against Hulahan, a representative of a local labor union, were, in substance, that, contrary to the statute, he conspired to extort, attempted to extort or extorted, by threats of labor trouble and other threats, money for his own personal use from representatives of three different companies engaged in construction work in St. Louis County, Missouri, two of which companies were dependent, for the continuation of the work undertaken by them, upon local labor represented in part by Hulahan, and upon equipment, supplies and materials shipped into Missouri from points in other states. One of the companies, M. H. Carpenter, Inc., was engaged in constructing a home development project known as Glasgow Village. The second company was constructing a flour packaging and storage building for the Valier and Spies Milling Company, which used the instrumentalities of interstate commerce for obtaining grain and distributing the company's products. The third construction company was doing the grading in connection with the construction of new runways and the improvement of old runways for the St. Louis Municipal Airport, in order more adequately to serve interstate commerce by air.

We shall refer to the first and second counts of the indictment. The first count charged Hulahan with having conspired with Gribbler, who was also a labor union representative (since deceased), to obstruct, delay and affect commerce, as defined in § 1951, Title 18 U.S.C., and the movement of articles and commodities in commerce, by extortion, and alleged that, in furtherance of such conspiracy, Hulahan and Gribbler attempted to obtain, by threats, $50,000, for their personal use and profit, from Miles H. Carpenter, representing M. H. Carpenter, Inc., which was constructing the project known as Glasgow Village. The second count of the indictment charged Hulahan with attempting to obstruct, delay and affect commerce, as defined in § 1951, Title 18 U.S.C., by extortion in seeking to obtain, by threats, $50,000 for his personal use and profit from Miles H. Carpenter, representing M. H. Carpenter, Inc.

In support of these charges, Miles H. Carpenter testified that Hulahan and Gribbler represented all the white laborers on the project; that the lumber for constructing the project came from the west coast and was shipped to Bissell Station adjoining the project and was trucked to the job site from that Station; that about a carload a week was scheduled for delivery; that the order for lumber was under Carpenter's control, and deliveries could be delayed or accelerated according to what was needed; that yellow pine was purchased in Arkansas, Louisiana, Texas and Tennessee, and delivered by truck from the mills to the job site; and that bath tubs and other fixtures were shipped in from Alliance, Ohio. Carpenter in his testimony told of his conversations with Hulahan and Gribbler at a time when there were 128 houses under construction on the project, to be finished within a year. He testified that Hulahan, after stating that he and Gribbler could be "of a lot of help," said: "You pay us $2,000 apiece and $2,000 a month and we will see that you never have any labor trouble out here. The job will run smoothly and you will not have any trouble." Carpenter also told of Hulahan's intimation that it would not run smoothly otherwise. Carpenter testified that he told Hulahan and Gribbler that he must have a few days to think their proposition over, and that

this was the first time he had ever been approached by a labor representative for a "shakedown." Carpenter testified that he then employed his counsel, Selden Blumenfeld, "to call up Hulahan, talk with Hulahan, and get Hulahan off my neck."

The following testimony of Selden Blumenfeld is illustrative of Hulahan's conduct in attempting to exact money from Carpenter:

"I am a St. Louis lawyer and represented Miles H. Carpenter in a labor matter involving Glasgow Village in the spring of 1951. In March, 1951, I talked to Hulahan over the telephone. I told Hulahan that I represented Carpenter and that Carpenter had discussed with me matters that had gone on between Hulahan and Carpenter, and that Carpenter had retained me to handle the matter further with Hulahan, and that I wanted to meet him and discuss the matter in further detail. Hulahan said, 'Well, where can we meet?' I suggested that we meet in my office, that I didn't know him, and wouldn't recognize him if we met in any other place, and he said, 'Well, I don't want to come down to your office. Your office might be bugged.' I didn't understand the meaning of 'bugged' at that time, but later I found out that it is an expression used to mean that the office might be wired to take down a conversation. I tried to assure Hulahan that the office was not wired, and then suggested that inasmuch as I didn't know him to recognize him by seeing him, that he might come to my office and introduce himself and from my office we could go over to the American Hotel and have luncheon and carry on our discussion there. Hulahan said that that was agreeable.

"I met Hulahan personally about the latter part of March, 1951. I met him shortly after noon on March 29, 1951. I met him at my office on March 29, 1951 at 706 Chestnut Street. On March 29, 1951, Hulahan came to my office and he was announced and came into my room and stood there for a moment, and we shook hands and I got up from my chair and walked over to the hall tree to get my topcoat to leave with him. Then, I think Hulahan said, 'Well there is no use for us to leave. We can talk here.' So I went back to my chair and we started our conversation. Hulahan said that he had this conversation with Mr. Carpenter some days before that and that the proposal he, Hulahan, had made to Mr. Carpenter could then be modified somewhat. Hulahan stated that if Carpenter would pay a lump sum of $50,000 in cash, he, Hulahan, would see to it that there would be no labor difficulties on the Glasgow Village job, and that there would be no jurisdictional disputes between the various crafts that were working there. Hulahan said that production on the job would be increased and the general efficiency of all the crafts would be better. Hulahan said that if something was not done along the line suggested by him, that is to say, payment of the $50,-000 due him from Carpenter, that there would always be labor difficulties on the job, and that the production would be held to a minimum, men would be pulled off the job, and work that might have been done would have to be done over again because of damages that might occur to the work."

There is no doubt that, under the evidence of the Government, Hulahan was guilty of conspiracy to extort, of attempts to extort, and of actually in two instances extorting, money from the construction companies named in the indictment, by means of express or implied threats of labor trouble. We think that Hulahan was shown to have been doing the very things that Congress, in enacting § 1951, Title 18 U.S.C., sought to reach and to make federal offenses, provided interstate commerce was affected.

■ Hulahan contends that what he was shown by the evidence to have done was not proved to have affected interstate commerce directly or substantially or at all, and that the effects of his attempts to exact tribute or his exaction of tribute from the companies engaged in local construction work in Missouri were too indirect, unsubstantial and remote to bring him within the scope of the federal statute. This Court, however, in Nick v. United States, 8 Cir., 122 F.2d 660, 668, 138 A.L.R. 791, certiorari denied 314 U.S. 687, 62 S.Ct. 302, 86 L.Ed. 550, rehearing denied 314 U.S. 715, 62 S.Ct. 411, 86 L.Ed. 570, rehearing denied 316 U.S. 710, 62 S.Ct. 1103, 86 L.Ed. 1776, held that the Anti-Racketeering Act, 18 U.S. C., 1940 Ed., §§ 420a–420e, from which § 1951, Title 18 U.S.C., is derived, was based upon the protection of interstate commerce, was valid, and was sufficient in scope to cover extortion from local exhibitors of moving picture films who were dependent upon interstate commerce for films to exhibit. We have no doubt that Congress has the power to deal with extortion or attempted extortion actually or potentially affecting interstate commerce, just as it has power to deal with unfair labor practices so affecting interstate commerce. Nick v. United States, supra, at page 668 of 122 F.2d. See and compare, National Labor Relations Board v. Fainblatt, 306 U.S. 601, 604–606, 59 S.Ct. 668, 83 L.Ed. 1014; National Labor Relations Board v. Denver Building & Construction Trades Council, 341 U.S. 675, 683–684, 71 S.Ct. 943, 95 L.Ed. 1284; National Labor Relations Board v. Crowe Coal Co., 8 Cir., 104 F.2d 633, 638–639, certiorari denied 308 U.S. 584, 60 S.Ct. 107, 84 L.Ed. 489. Compare, also, United States v. Employing Plasterers' Association of Chicago, 347 U.S. 186, 74 S.Ct. 452.

■ It seems apparent from the language of the statute that it was the intent of Congress to protect interstate commerce against extortion or attempted extortion which in any way or in any degree reasonably could be regarded as affecting such commerce. The exaction of tribute from contractors engaged in local construction work who are dependent upon interstate commerce for materials, equipment and supplies, or who are engaged in constructing facilities to serve such commerce, is, in our opinion, proscribed by the statute in suit.

The instruction of which Hulahan complains reads as follows:

"I charge you, as a matter of law, that if you believe the testimony of the Government witnesses with reference to the federal jurisdictional element of interstate commerce involved in this case, that is to say, the Government's testimony with reference to the bringing of various materials, commodities, and equipment, from out of state to the job sites in question in this federal judicial district, then you are instructed that defendant's activities as shown by the Government's testimony, if you believe the same, did delay, obstruct and affect interstate commerce as that language is used in the statutes under which these charges are brought. That is to say, if you find the facts to be as testified to by the Government's witnesses, the Court has determined as a matter of law that there has been a substantial affect on interstate commerce shown here by the United States and that question is not for your determination. However, before you can find the defendant guilty under any or all of the counts in the indictment you must find beyond a reasonable doubt that the defendant has extorted money or property or conspired so to do, as those terms are defined in the statute and other instructions given you by the Court."

■ This instruction amounts to nothing more than a statement that, if the jury believed the evidence of the Government relative to the interstate shipment of materials, commodities and equipment for use by the construction companies, the activities of Hulahan, if they constituted extortion or attempts or conspiracies to extort, would necessarily

have affected interstate commerce within the meaning of the statute. We think it was for the court, and not the jury, to determine whether the Government's evidence, if believed, would bring the activities of the defendant within the statute and sustain federal jurisdiction. A similar instruction was challenged in Nick v. United States, supra, at page 673 of 122 F.2d. In that case, this Court said:

" * * * It is not for the jury to determine what is or what is not interstate commerce—that is a question of law. It is for the court to charge the jury that if certain facts covered by the evidence are shown then there is such interference. This is what the court stated and its statement is proper."

Cf. United States v. Compagna, 2 Cir., 146 F.2d 524, 527.

Our conclusion is that Hulahan had a fair trial; that the jury was justified, under the evidence, in finding him guilty; and that the judgment appealed from should be affirmed.

Judgment affirmed.