**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Anthony AUGELLO, Defendant-Appellant.**

**No. 266, Docket 35281.**

United States Court of Appeals, Second Circuit.

Argued Nov. 5, 1971.

Decided Nov. 23, 1971.

John N. Iannuzzi, New York City (Iannuzzi & Iannuzzi, New York City), for appellant.

Richard A. Levie, Atty., U. S. Dept. of Justice, Washington, D. C. (Robert A. Morse, U. S. Atty. for the Eastern District of New York, Sidney M. Glazer, Atty., U. S. Dept. of Justice, Washington, D. C., of counsel), for appellee.

Before WATERMAN, SMITH and TIMBERS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Anthony Augello was convicted on trial to the jury in the United States District Court for the Eastern District of New York, Joseph C. Zavatt, Judge, on two substantive counts of a four-count indictment charging him and two co-defendants[1] with conspiracy and three substantive offenses[2] of extortion obstructing interstate commerce, in violation of the Hobbs Act (18 U.S.C. § 1951).[3] He was sentenced to concurrent five-year prison terms on each count, but has been enlarged on bail pending the determination of this appeal. We find no reversible error and affirm the conviction.

The government's principal witness at trial was one Saul Rosen, alleged owner of a Brooklyn drive-in restaurant called Happy-Burger, which was incorporated with Rosen as its president. Appellant and his co-defendants became regular Happy-Burger customers during the summer of 1968. According to Rosen's testimony, appellant on September 2, 1968 asked for $100, which sum Rosen, considering appellant to be a friend, agreed to pay on the assumption it was a loan. Two days later, when he requested repayment, Rosen discovered it was not a loan after all; indeed an additional $100 was demanded forthwith on pain of physical harm, together with $250 a month for Rosen "to be with" appellant. Appellant explained that: "[f]rom now on you are with me * * * nobody else will bother you," at the same time giving Rosen three telephone numbers where he could be reached for assistance. Rosen promptly paid the second hundred dollars, taking it directly from the cash register at

1. The court dismissed the case against one co-defendant, Julius Bernstein, and gave only one count to the jury as to the other, Clement Caserta; he was acquitted.

2. The first two counts against appellant were dismissed by the court at the close of the government's case.

3. The statute, so far as pertinent, provides: "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by * * * extortion * * * shall be fined not more than $10,000 or imprisoned not more than twenty years, or both." "Extortion" is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear * * *."

Happy-Burger, unlike the first hundred which had apparently been on Rosen's person. Finally, Rosen was told that should he ever decide to sell his business, 50% of the proceeds were to go to appellant. On September 9, 1968, Rosen called the police.

On September 10, 1968, the police equipped Rosen with a radio transmitter, and stationed themselves outside Happy-Burger with a receiver and tape recorder. Before the receiver went dead, the police allegedly overheard appellant refuse to pay for food and threaten physical violence if Rosen failed to make further payments. The police later destroyed the tape which recorded appellant's alleged statements, claiming that it was unintelligible.

Sometime after the police receiver had ceased functioning, Rosen purportedly offered a $100 payment which appellant said would be collected by another party. Co-defendant Caserta returned the same night and was given $100 in marked bills by Rosen; when he passed the money to appellant, both men were arrested.

Appellant complains that although Happy-Burger purchased its meat products from a New Jersey concern, the indictment nevertheless failed to charge a violation of the Hobbs Act[4] because those products were procured by the corporate entity, whereas appellant dealt solely and personally with Rosen, extorting his personal funds, not money belonging to the corporation. Consequently, appellant concludes, it cannot be said that his actions interfered with interstate commerce.

We disagree. Although ownership of stock in Happy-Burger was not elicited at trial, it was the uncontradicted testimony of Rosen that he owned Happy-Burger, operated it with the assistance of one full-time and one part-time employee, and himself ordered the meat products which were the mainstay of the restaurant from a New Jersey concern. One of the three payments made to appellant came directly from the cash register of Happy-Burger; all threats were made at or near the restaurant; one demand made was for 50% of the proceeds should Happy-Burger be sold.

■ If believed, the evidence showed that Rosen, acting in his business capacity as the owner and operator of Happy-Burger, was induced by threats of physical violence to make money payments to appellant in return for protection against interference in operating his restaurant. Patently a corporate entity can be threatened only through the people who operate it. To threaten Rosen in his business capacity was to obstruct the operation of Happy-Burger.

■■ Nor does the providential fact that Rosen's fear led him to the police before the conduct of his business was affected in a way demonstrably interfering with interstate commerce remove this case from the purview of the Hobbs Act. While the effect on interstate commerce was obviously sharper in the otherwise similar case of United States v. DeMasi, 445 F.2d 251 (2d Cir. 1971), wherein actual disturbances in a nightclub led to its failure and the complete curtailment of interstate purchases, the requisite effect need not be so devastating. Given the sweeping power of Congress under the commerce clause, Katzenbach v. McClung, 379 U.S. 294, 305, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964), particularly evident in the Hobbs Act, Stirone v. United States, 361 U.S. 212, 215, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), it is enough that the extortion "in any

---

4. Omission of the fact of Happy-Burger's incorporation in the indictment plainly did not create a fatal variance between the indictment and the proof. The indictment clearly revealed the intent of the prosecution to prove interference in the operation of the Happy-Burger business to the detriment of interstate commerce.

Thus appellant could not have been prejudiced in the preparation of his defense. Since there is no question of double jeopardy, no "substantial rights" of appellant have been adversely affected. Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

**1170**

way or degree," 18 U.S.C. § 1951(a), affects commerce, though its effect be merely potential or subtle. United States v. Tropiano, 418 F.2d 1069, 1076–1077 (2d Cir. 1969), cert. denied, Grasso v. United States, 397 U.S. 1021, 90 S.Ct. 1258, 25 L.Ed.2d 530 (1970); Hulahan v. United States, 214 F.2d 441, 445 (8 Cir.), cert. denied, 348 U.S. 856, 75 S.Ct. 81, 99 L.Ed. 675 (1954). Here, depletion of Happy-Burger's resources, which by itself may impair the efficient conduct of its business sufficiently to affect commerce, United States v. Provenzano, 334 F.2d 678, 692 (3 Cir.), cert. denied, 379 U.S. 947, 85 S.Ct. 440, 13 L. Ed.2d 544 (1964), was shown at the very least by the September 5, 1968 payment taken directly from Happy-Burger's cash register. We are therefore persuaded that the charges in this indictment provided a proper basis to invoke the Hobbs Act.

Appellant next challenges the charge to the jury that if the evidence that Rosen purchased goods in interstate commerce, and that he was the victim of extortion, were believed, then as a matter of law interstate commerce was affected. The charge was correct; "it was for the court, and not the jury, to determine whether the Government's evidence, if believed, would bring the activities of the defendant within the statute and sustain federal jurisdiction." *Hulahan*, 214 F.2d at 446. *Accord*, United States v. Green, 246 F.2d 155, 160–161 (7 Cir.), cert. denied, 355 U.S. 871, 78 S.Ct. 122, 2 L.Ed.2d 76 (1957); United States v. Lowe, 234 F.2d 919, 922 (3 Cir.), cert. denied, 352 U.S. 838, 77 S.Ct. 59, 1 L.Ed.2d 56 (1956); United States v. Varlack, 225 F.2d 665, 672 (2d Cir. 1955); cf. United States v. Ricciardi, 357 F.2d 91, 94 (2d Cir.), cert. denied,

384 U.S. 942, 86 S.Ct. 1464, 16 L.Ed.2d 540 (1966). It is true that in United States v. Battaglia, 394 F.2d 304, 312 (7 Cir. 1968), vacated on other grounds sub nom. Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969), the court approved an instruction under the Hobbs Act giving the question of the effect of defendant's conduct on commerce to the jury, but there the propriety of such an instruction was not an issue in the case; rather appellant had attacked the failure to give precisely the same instruction as to his intent to affect commerce which this court had earlier rejected in United States v. Varlack, *supra*, 225 F.2d at 672. In approving the disputed charge in the instant case, we decline to follow the dictum of *Battaglia, supra*, and adhere instead to the rationale of *Hulahan, supra*, and its progeny.[5]

While the degree of compliance by the police agents with existing departmental regulations is not crystal clear, the record taken as a whole gives no indication of such bad faith or negligence in the destruction of the allegedly unintelligible tapes as would call for suppression of the testimony of the police agents. United States v. Bryant, 439 F.2d 642 (D.C.Cir. 1971). *See* United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969).[6]

Our examination of the standard booking forms made out by appellant's arresting officers, who later became government witnesses at trial, compels us to agree with the court below that they were not producible under 18 U.S. C. § 3500.

Judgment affirmed.

---

5. In the light of Rosen's uncontradicted testimony that he was the owner of Happy-Burger and the purchaser of its meat products, we find no merit in appellant's contention that various other parts of the instructions to the jury were erroneous or confusing.

6. If such a loss, absent a showing of negligence or bad faith, would not require suppression of the police officers' testimony, it would no more require a charge to the jury that an inference favorable to appellant could have been drawn from the loss. Moreover, no such instruction was requested by appellant.