**UNITED STATES of America**

v.

**Elbin FLORES, Defendant.**

**No. 94 CR 104 (KMW).**

United States District Court,
S.D. New York.

June 17, 1994.

---

639

Vernon S. Broderick, Asst. U.S. Atty., Mary Jo White, U.S. Atty., New York City, for plaintiff.

Inga Parsons, Legal Aid Society, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Defendant Elbin Flores is charged in a two-count indictment with interfering with interstate commerce by robbing a flower shop owner of a portion of the proceeds of her business, in violation of the Hobbs Act, 18 U.S.C. § 1951(b)(1), and with using a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c). Defendant moves to dismiss the indictment in its entirety for lack of federal jurisdiction. For the reasons stated below, defendant's motion is denied.[1]

---

1. Defendant also moved (1) to suppress identifications made from a photo array and a lineup, or, alternatively, for a hearing on identification procedures; and (2) for a Bill of Particulars. At a hearing before the court on May 19, 1994, I denied defendant's motion for a Bill of Particulars and held, based on a review of the photo array and lineup, and as a matter of law, that neither the photo array nor the lineup was unduly suggestive. I also ruled that an in-court identification would have reliability independent of the challenged photo array and lineup, based on the factors enunciated in *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–383, 34 L.Ed.2d 401 (1972): (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Defendant objected that with respect to the first two *Biggers* factors, the Government relied on a hearsay affidavit by the Assistant United States Attorney, and argued that affidavits from the

complaining witnesses should be required. I granted counsel permission to brief this issue. Having read the briefs, I conclude that affidavits from the complaining witnesses are not required, because no one of the *Biggers* factors is dispositive, *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993), and because sufficient evidence exists as to the remaining *Biggers* factors. Prior to viewing the photo array and the lineup, the owner of the flower shop identified defendant out of a book of approximately 1300 photographs, indicating a high level of certainty; all the identifications occurred within two days of the alleged crime; and the flower shop owner's description of defendant was accurate. In addition, where, as here, pretrial identification procedures are not unduly suggestive, "trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification." *United States v. Maldonado–Rivera*, 922 F.2d 934, 973 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2858, 115 L.Ed.2d 1026 (1991).

## Background

The government alleges that the victims, the owner of a flower shop and her son, were entering their apartment with a bag containing approximately $4,000 in proceeds from the flower shop when they were attacked by defendant. According to the government, defendant and two other assailants tied up both victims and took the $4,000; defendant and the other male assailant then sexually assaulted and raped the owner of the flower shop. The assailants allegedly ransacked the apartment and took an unknown amount of jewelry, in addition to the $4,000. The government rests jurisdiction upon its allegation that the flower shop sells flowers and other items that move in interstate commerce.

## Analysis

■ The Hobbs Act provides, in relevant part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do so ... shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a).

As defendant acknowledges, both the United States Supreme Court and the Second Circuit Court of Appeals have taken an expansive view of federal jurisdiction under the Hobbs Act. The Supreme Court has stated,

> the statutory language sweeps within it all persons who have *"in any way or degree* ... affect[ed] commerce ... by robbery or extortion."* These words do not lend themselves to a restrictive interpretation; as we have recognized, they "manifest ... a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery, or physical violence."

*United States v. Culbert,* 435 U.S. 371, 373, 98 S.Ct. 1112, 1113, 55 L.Ed.2d 349 (1978) (emphasis added) (citing *Stirone v. United States,* 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960)). *See also Jund v. Hempstead,* 941 F.2d 1271, 1285 (2d Cir. 1991) (if defendant's conduct "produces an interference with or effect upon interstate commerce, *whether slight, subtle or even potential,* it is sufficient to uphold a prosecution under the Hobbs Act") (emphasis added). In the Second Circuit, the depletion of assets of an enterprise that conducts business in interstate commerce "by itself may impair the efficient conduct of its business sufficiently to affect commerce." *United States v. Augello,* 451 F.2d 1167, 1170 (2d Cir.1971), *cert. denied,* 405 U.S. 1070, 92 S.Ct. 1518, 31 L.Ed.2d 802 (1972) (finding federal jurisdiction under Hobbs Act satisfied where victim of extortion, the owner of a hamburger restaurant, met extortion demand with $100 from restaurant cash register). The government contends that a similar depletion of assets took place here, because defendant allegedly robbed the victims of the proceeds of their business, thereby lessening the ability of the enterprise to transact business in interstate commerce.

Defendant concedes the broad reach of the Hobbs Act and the adoption in the Second Circuit of the "depletion of assets theory" of Hobbs Act jurisdiction. Def.'s Mem. at 4–5. However, defendant contends that the case at bar is distinguishable from other Second Circuit decisions applying the depletion of assets theory in two crucial respects. First, defendant claims that none of the depletion of assets decisions has involved precisely the combination of facts present in the case at bar. According to defendant, the depletion of assets decisions involve either racketeering, union-related activity, extortion under color of official right, or straightforward extortion from a business. The offenses are on-going schemes of extortion rather than one-time events, and take place at the business the assets of which are depleted, rather than at the owner's home. Here, in contrast, the crime at issue is a "garden variety ... rape and armed robbery" that took place at a residence—a single act rather than an ongoing scheme. Def.'s Mem. at 4.[2] Second,

---

**2.** Defendant also suggests that the amount taken here was so small that it did not deplete the assets of the flower shop so as to significantly affect its purchasing power in interstate commerce. As defendant himself concedes, however, courts applying the depletion of assets theory have generally made no distinction between large and small amounts of money. Def.'s Mem.

defendant argues that the fact that the victims brought the allegedly stolen funds home gives rise to an inference that the funds were intended for personal use, and were not assets of the flower shop. If the funds in question were not business assets, defendant contends, the court may not apply the depletion of assets theory at all. I agree with defendant that this case is a close one that appears to lie near the outer limits of Hobbs Act jurisdiction. Nevertheless, I conclude, in light of the language of the statute, the decisional law, and the statute's legislative history, that the case falls within those limits, and that defendant's motion to dismiss the indictment for lack of jurisdiction must be denied.

Defendant is correct that almost no decisional law extending federal jurisdiction to precisely the circumstances at issue here exists in this circuit. *But see United States v. Fernandez*, 1993 WL 362392 (S.D.N.Y.1993) (Kram, J.) (finding federal jurisdiction where owner of furniture store was allegedly robbed, at home, of assets of his furniture store, and where furniture store did business in interstate commerce).[3] However, defendant offers no reason why the factual differences between this case and other depletion of assets cases should be dispositive here. It is true that the Hobbs Act was enacted at a time at which Congress was concerned about labor racketeering and extortion. *United States v. Enmons*, 410 U.S. 396, 401–11, 93 S.Ct. 1007, 1010–16, 35 L.Ed.2d 379 (1973) (discussing legislative history of Hobbs Act). This history may suggest that extortion lies closer to the heart of the Hobbs Act than does robbery. In addition, prosecutions for extortion under the Hobbs Act appear to be more frequent than prosecutions for robbery. However, the language of the Act explicitly embraces robbery as well as extortion, pro-

vided it affects interstate commerce "in any way or degree." I see no reason why the depletion of assets theory of Hobbs Act jurisdiction should not apply in robbery cases, and several courts have so applied it. *See, e.g., United States v. Norris*, 792 F.2d 956, 957–58 (10th Cir.1986) (finding federal jurisdiction where robbery of Brinks car depleted assets of a business engaged in interstate commerce); *United States v. Scaife*, 749 F.2d 338, 347–48 (6th Cir.1984) (conspiracy to rob general store); *United States v. Caldarazzo*, 444 F.2d 1046, 1048–49 (7th Cir.), *cert. denied sub nom. DeLegge v. U.S.*, 404 U.S. 958, 92 S.Ct. 328, 30 L.Ed.2d 276 (1971) (robbery of jewelry salesman); *Fernandez*, 1993 WL 362392 at *2 (robbery of furniture store owner); *cf. United States v. Skowronski*, 968 F.2d 242 (2d Cir.1992) (upholding conviction for robbery of store under Hobbs Act, without reference to depletion of assets theory); *United States v. Jarrett*, 705 F.2d 198, 201 (7th Cir.1983), *cert. denied*, 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984) ("Nothing on the face of the Hobbs Act indicates a congressional intent to define the phrase 'affects commerce' more narrowly with respect to the offense of robbery as opposed to the offense of extortion."). I therefore reject defendant's argument that the facts of this case distinguish it from extortion cases in which the depletion of assets theory has been applied, and hold that the depletion of assets theory is applicable here.

Defendant's argument that ongoing criminal activity is a necessary element of a Hobbs Act violation is similarly unpersuasive. Although extortion may frequently involve an ongoing scheme, robbery is more commonly a single event, and the statute's definition of robbery bears no trace of an ongoing activity

---

at 9. Moreover, the Court of Appeals for the Second Circuit has found a Hobbs Act violation even where the amount taken is as small as two hundred dollars. *Augello*, 451 F.2d at 1170.

**3.** In addition to *Fernandez*, the government cites an unpublished decision dated November 16, 1993, in which Judge McKenna denied a motion to overturn a Hobbs Act conviction in a case involving robbery of a store owner at a residence. *United States v. Alverado*, 93 Cr. 728 (S.D.N.Y.). In *Alverado*, the victim testified that

he brought home each night cash and food stamps representing the proceeds from his stores. It was stipulated that the stores sold goods that traveled in interstate commerce. The government also calls the court's attention to a contrary ruling by Judge Sprizzo in *United States v. Garcia*, 92 Cr. 791. Broderick Aff. Ex. I. At a hearing on March 26, 1993, Judge Sprizzo rejected the view that the robbery of a victim, at his residence, of the proceeds of his business, is a Hobbs Act offense. *Id.* at p. 19–23.

requirement.[4] The court notes that when Congress wishes to make ongoing criminal activity an element of a federal offense, it knows how to do so. *See, e.g.,* 18 U.S.C. §§ 1961(5), 1962 (making unlawful various actions in connection with a "pattern of racketeering activity"). Defendant's argument is not supported by the language of the statute.

Defendant's argument also finds no support in the decisional law. It is true that courts have cited *United States v. Merolla,* 523 F.2d 51 (2d Cir.1975), for the proposition that a "one-time only effect on interstate commerce" is insufficient to ground jurisdiction under the Hobbs Act.[5] See *Jund,* 941 F.2d at 1285. In *Merolla,* the Second Circuit Court of Appeals reversed a conviction for extortion under the Hobbs Act where the evidence failed to show that the victim of the extortion was involved in an ongoing business that made continuing interstate purchases. However, it was the victim's *purchase* of items in interstate commerce that the *Merolla* court held must be ongoing, not the criminal conduct that impairs the ability to purchase. The court stated:

> As for the depletion of assets theory, we have no difficulty with the general premise. Where the victim of an extortion scheme *customarily* obtains supplies through interstate commerce, the diminution of the victim's resources impairs his purchasing power and may therefore be found to affect interstate commerce for the purpose of the Hobbs Act.
>
> The victim's purchase of interstate goods, however, must be of a continuing nature or the relationship between the ex-

tortion and any interstate commerce becomes merely conjectural.... [I]n the present case, there is no evidence that [the victim] was involved in any on-going business, let alone an on-going business with recurring interstate purchases.

523 F.2d at 54–55.[6] The *Merolla* court articulated no requirement that criminal activity be ongoing in order to rise to an offense under the Hobbs Act. *See also Culbert,* 435 U.S. at 372, 98 S.Ct. at 1113 (upholding Hobbs Act conviction as to one-time act of extortion); *Norris,* 792 F.2d at 957 (one-time robbery of Brinks car); *Jarrett,* 705 F.2d at 201 (one-time robbery of jewelry store); *Fernandez,* 1993 WL 362392 (one-time robbery of furniture store owner).

■ Defendant next argues that the court should decline to find federal jurisdiction here because the alleged crime took place at a residence, rather than at a business, unlike the vast bulk of the cases in which the depletion of assets theory has been applied. Defendant is correct that there exists almost no decisional law finding a violation of the Hobbs Act where the crime took place at a residence rather than at a business. *But see Fernandez,* 1993 WL 362392 and *supra* note 3. However, defendant offers no principled reason for distinguishing between residential and business premises. Such a distinction might be relevant if the Hobbs Act required an intent on the part of a defendant to interfere with interstate commerce. But it is well established that a purpose or intention to interfere with interstate commerce is not a necessary element of a Hobbs Act violation;

---

**4.** The Hobbs Act defines "robbery" as

the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1).

**5.** This language appears to have been decisive for Judge Sprizzo's ruling in *United States v. Garcia,* 92 Cr. 791, Broderick Aff. Ex. I at 19.

**6.** In *Jund,* 941 F.2d 1271, the Second Circuit Court of Appeals upheld convictions of municipal associations for extortion under the Hobbs Act

where a jury reasonably found that defendants constituted an enterprise which engaged in or whose activities affected interstate commerce. The court distinguished the facts in *Jund* from those in *Merolla* on the ground that "*Merolla* involved a one time only effect on interstate commerce," whereas *Jund* "involved a consistent and long-lasting effect on commerce by reducing the funds available to all those victimized by the scheme.... The cumulative effect on interstate commerce from all those victimized could have been very substantial." *Id.* at 1285. Thus in *Jund,* as in *Merolla,* it was the continuing effect on interstate commerce, not the ongoing nature of the activity having that effect, that was dispositive.

it is sufficient that one of the natural effects of the offense is an obstruction of that commerce. *United States v. Daley,* 564 F.2d 645, 649 (2d Cir.1977), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978); *United States v. Varlack,* 225 F.2d 665, 672 (1955) (for conviction under Hobbs Act, it is not necessary for jury to find that defendants considered that effect of conspiracy would be to affect interstate commerce, or that one of purposes of conspiracy was to affect interstate commerce) (citing *Nick v. United States,* 122 F.2d 660, 673 (8th Cir.1941)); *United States v. Mazzei,* 390 F.Supp. 1098 (W.D.Pa.), *aff'd,* 521 F.2d 639, *cert. denied,* 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975) (holding that defendant need not be able to foresee or anticipate interference with interstate commerce in order to be convicted under Hobbs Act, and citing cases).[7] The court concludes that the fact that the alleged crime took place in a residence does not defeat federal jurisdiction.

■ Defendant's final argument is that the allegedly stolen funds were not business assets at all, and that therefore the depletion of assets theory does not apply. Defendant contends that the fact that the victims brought the funds home gives rise to an inference that the funds were intended for personal use. In deciding a motion to dismiss an indictment, however, the question is not whether the government will be able to prove all elements of a Hobbs Act claim, but only whether it has sufficiently alleged those elements in the indictment. *United States v. Pisani,* 590 F.Supp. 1326, 1333 (S.D.N.Y. 1984), *rev'd on other grounds,* 773 F.2d 397 (2d Cir.1985) (if indictment alleges each of the necessary elements of the offense charged, then it "is not subject to dismissal on the basis of factual questions, the resolution of which must await trial") (quoting *United States v. Black,* 291 F.Supp. 262, 264

(S.D.N.Y.1968)). Here, the government has alleged that the defendant committed robbery of the proceeds of an enterprise that conducts business in interstate commerce, and that such robbery interfered with interstate commerce. See Indictment, Broderick Aff. Ex. A. In addition, in its memorandum of law, the government proposes to prove at trial that the funds were to be deposited in a business-related account. At this stage, these allegations are sufficient to establish federal jurisdiction. If, at trial, the evidence fails to establish that the allegedly stolen funds were assets of the flower shop, and that the shop transacts business in interstate commerce, defendant may move to reverse his conviction.

Finally, defendant argues that the application of the depletion of assets theory to this case will virtually eliminate any jurisdictional requirement for Hobbs Act offenses, leaving only prosecutorial discretion to draw the line between federal and local crimes. The court disagrees that the application of the depletion of assets theory to this case appreciably expands the already sweeping expanse of federal criminal jurisdiction. Cases in which victims bring business assets to their homes are likely to be rare, and the government is still required to prove that the assets of an enterprise that conducts business in interstate commerce were depleted by the crime. Defendant is undoubtedly correct that the language of the Hobbs Act makes federal crimes of many traditionally local state offenses, and gives federal prosecutors the discretion to prosecute particular cases in federal court. *See Culbert,* 435 U.S. at 379–80, 98 S.Ct. at 1116–17 (in enacting Hobbs Act, "there is no question that Congress intended to define as a federal crime conduct that it knew was punishable under state law ... Congress apparently believed ... that the States had not been effectively prosecuting

---

7. *United States v. Buffey,* 899 F.2d 1402 (4th Cir.1990), cited by defendant, is not to the contrary. In *Buffey,* the Fourth Circuit Court of Appeals noted that "the government may satisfy the [Hobbs] Act's jurisdictional predicate indirectly if it can show a reasonable probability that the defendants' actions would have the effect of depleting the assets of an entity engaged in interstate commerce." The court concluded that there was not a reasonable probability that the victim of an attempted extortion would have used proceeds from his business to satisfy defendants' extortion demands, and therefore reversed defendants' convictions. *Buffey* stands for the proposition that where the alleged effect on interstate commerce is indirect and merely potential, the government must demonstrate that the effect is a reasonable probability. In the case at bar, however, the government has alleged an *actual* effect on interstate commerce.

robbery and extortion affecting interstate commerce and that the Federal Government had an obligation to do so."). However, whether prosecutorial discretion ought to be the sole bulwark of federalism in this context, and whether it is appropriate for similarly situated defendants to be treated differently because they are prosecuted by different law enforcement authorities, are questions for Congress, not the court, to resolve. The language of the Hobbs Act "manifest[s] a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence." *Stirone v. United States,* 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960). That language requires the court to find federal jurisdiction here.

### Conclusion

For the reasons stated above, defendant's motion to dismiss the indictment for lack of federal jurisdiction is denied.

SO ORDERED.