**Lloyd Carl CUMMINGS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 6598.**

United States Court of Appeals
Tenth Circuit.

April 25, 1961.

John E. Clough, Denver, Colo., for appellant.

Jerry W. Hannah, Asst. U. S. Atty., Great Bend, Kan. (Newell A. George, U. S. Atty., Kansas City, Kan., on the brief), for appellee.

Before BRATTON, LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

A jury found appellant Cummings guilty on each count of a 4-count indictment and he was sentenced to 3-year concurrent terms of imprisonment on each. Count 1 charges violation of 18 U.S.C. § 2316 by the transportation of 20 cattle from Manitoba, Canada, to Topeka, Kansas, with knowledge that they had been stolen. Count 2 is based on the sale and disposition of these cattle in violation of 18 U.S.C. § 2317. Count 3 covers the use of interstate wire communications to execute a scheme to defraud, 18 U.S.C. § 1343, and Count 4 charges the use of the mails for the same purpose, 18 U.S.C. § 1341. The transaction which gave rise to the accusations was the acquisition by defendant of cattle in Canada with the use of an insufficient funds check for half the purchase price and the execution of a note for the balance. The cattle were shipped to, and disposed of in, Kansas. The telephone calls on which Count 3 is based were from the defendant in Kansas to the agent of the seller in Canada and referred to the shipment of the cattle and to the insufficient funds check. The use of the mails arose when the same check was mailed by the bank in Canada where it was deposited to the Kansas bank on which it was drawn.

The defendant did not take the stand and the three witnesses who testified for him did not refute the facts on which

the prosecution relies. Counsel argues that the defendant did not intend to unlawfully deprive the owner of his property and, hence, the cattle were neither transported nor disposed of in violation of the statutes on which Counts 1 and 2 are based. As to Counts 3 and 4, it is contended that the lack of criminal intent negatives the possibility of a scheme to defraud.

Defendant, a dairy herd tester, in June, 1957, engaged in a series of cattle-buying enterprises. He first went to Grand Forks, North Dakota, and purchased 10 cows for Jones and 7 cows for Steward, each of whom were Kansas dairy farm operators. His bank balance at the time was $2.87 but notwithstanding this handicap he gave a check for $1,315 for the Jones cattle and $635 for the Steward cattle. The remainder of the purchase price was financed through a loan company with defendant signing the names of Jones and Steward to the necessary papers. He apparently had authority for such action from Jones but not from Steward. These cattle were shipped by truck to Kansas.

On June 15, 1957, at a sale in Manitoba, Canada, defendant purchased from one Baldry 20 cattle for which he gave a check in the amount of $3,937.50 and a lien note for the same sum. At the time there had been no improvement in his bank balance and the Grand Forks checks were outstanding. The Baldry cattle, which form the basis of the indictment, were shipped from Canada to Kansas by truck.

Returning to Kansas on June 17, defendant delivered the 7 cows to Steward and received a check for $2,833 as payment in full. The deposit of this check allowed the Grand Forks checks to clear. When the $3,937.50 check for the Baldry cattle was presented on June 20 the balance in the defendant's account was $440.87.

Jones traded defendant some heifers for the 10 Grand Forks cows which defendant had purchased for him. On June 25 defendant obtained a bank loan of $1,679 on these heifers. This made his balance $2,019.87. At about this time, the date not being precisely fixed in the record, defendant by phone told Baldry's agent to send the $3,937.50 check through again. The record is not clear on whether this was done.

The Baldry cattle arrived in Topeka on June 23 and were unloaded on Jones' farm. At about this time the Grand Forks loan company learned that Steward had repudiated the arrangements made in his name by defendant and had refused to pay the balance due of $2,025.85. A representative of the loan company came to Topeka, confronted defendant with Steward's denial of authorization for the financing, and by threats of laying the matter before the local prosecuting authorities obtained payment from defendant of the balance due. Such balance was paid in part by check drawn against the proceeds of the bank loan on the Jones heifers and in part by the forced sale at sacrifice prices of some of the Baldry cattle. Shortly thereafter the defendant left Kansas. Nothing was ever paid on either the check or note to Baldry. The record is not clear as to the disposition of all the Baldry cattle.

In United States v. Turley, 352 U.S. 407, 417, 77 S.Ct. 397, 402, 1 L.Ed. 2d 430, it was held that the word "stolen" as used in 18 U.S.C. § 2312, relating to the interstate transportation of motor vehicles with knowledge that the same have been stolen, "includes all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." The same definition should apply to "stolen" as it appears in §§ 2316 and 2317 relating to cattle. Concerning the counts based on these two statutes, it is urged that the evidence is insufficient to establish criminal intent at the time of the transaction.

Cummings secured possession of the cattle by giving a bogus check for half the purchase price and a worthless note for the other half with repre-

sentations that each would be paid. Under Turley this constitutes obtaining property by false pretenses and is within the purview of "stolen."[1] Criminal intent is usually a question of fact for determination by the jury and can be inferred from facts and circumstances reasonably tending to manifest a mental attitude.[2] In determining the sufficiency of the evidence to sustain a conviction an appellate court is confined to the question of law as to whether, viewing the evidence in the light most favorable to the prosecution, there is substantial evidence, either direct or circumstantial, which, together with the reasonable inferences to be drawn therefrom, sustains the verdict.[3] In the case at bar there is substantial evidence from which a reasonable inference of criminal intent may be drawn.

■■■ Counsel for Cummings argues that the conviction may not be sustained because Cummings has not been charged or convicted in Canada of either stealing the cattle or obtaining them by false pretenses. Such conviction is not a condition precedent to prosecution and conviction under the federal statutes. The reason for statutes such as these is the inability of state prosecutions to meet the evil.[4] The contention that the convictions are violative of due process because they may not be asserted to bar a prosecution in Canada for larceny or false pretenses has no merit. The elements of the offense charged in the first count are interstate transportation of

the cattle and knowledge that they had been stolen. Elemental in the second count is disposition of cattle having moved in interstate commerce together with knowledge that they had been stolen. The fact that prosecution in Canada may follow does not invalidate the federal conviction. The question of double jeopardy arises only when there is a prosecution in Canada growing out of the transaction here involved. Neither conviction nor acquittal in federal or state court bars a prosecution in a court of the other jurisdiction involving or arising from the same transaction or event.[5]

■■■ The attacks made on the sufficiency of the evidence to sustain Counts 3 and 4 are of a more serious nature. While there is substantial evidence from which it could reasonably be inferred that a scheme to defraud existed, the use of the mails essential to Count 4 is the mailing by the Canadian bank of the purchase money check to the Topeka bank for clearance. The check was dated June 15 and payment was denied on June 20. The cattle were shipped from Canada on June 21. There were two phone calls which are said to satisfy Count 3 charging use of interstate wire communication. One of these was before shipment and the conversation related to the delay in shipment. The other was after shipment and requested the redeposit of the check. In Parr v. United States, 363 U.S. 370, 392–393, 80 S.Ct. 1171, 4 L.Ed.2d 1277, and Kann v. United States, 323 U.S. 88, 94–95, 65 S.Ct. 148,

---

1. In United States v. Turley, supra, at page 416, 77 S.Ct. at page 402, it is said: "But an automobile is no less 'stolen' because it is rented, transported interstate, and sold without permission of the owner (embezzlement). The same is true where an automobile is purchased with a worthless check, transported interstate, and sold (false pretenses)." Footnotes omitted. See also Scott v. United States, 4 Cir., 255 F.2d 18, 20, certiorari denied 357 U.S. 942, 78 S.Ct. 1392; O'Dell v. United States, 10 Cir., 251 F.2d 704, 706; and Gerber v. United States, 10 Cir., 287 F.2d 523.

2. Morissette v. United States, 342 U.S. 246, 274–276, 72 S.Ct. 240, 96 L.Ed. 288.

3. Reynolds v. United States, 10 Cir., 289 F.2d 698; Travis v. United States, 10 Cir., 269 F.2d 928, 936, reversed on other grounds 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340; Corbin v. United States, 10 Cir., 253 F.2d 646, 649.

4. See legislative history of § 2312 set out in United States v. Turley, supra, 352 U.S. at page 414, 77 S.Ct. 397, note 13.

5. Bartkus v. People of State of Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684; Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729.

89 L.Ed. 88, it was held that the use of the mails after fruition of a scheme to defraud was not within the purview of the mail fraud statute. The same rule should apply in interstate wire communication cases as in mail fraud cases. If the mailing of the check by the Canadian bank was an incident essential to the consummation of the scheme to defraud,[6] and if the telephone calls were to lull the Canadian owner into a sense of security and prevent action which might have interfered with the operation of the scheme,[7] the rule established in the Parr and Kann cases would not apply. In the case before us we find it unnecessary to determine these issues. We are convinced that the convictions under Counts 1 and 2 must be sustained. Cummings received 3-year concurrent sentences on each count. In such situation the judgment must be affirmed.[8]

▆ The further argument is made that if the conviction under Counts 3 and 4 cannot be sustained, a new trial must be granted as to Counts 1 and 2 because the evidence received to establish Counts 3 and 4 may have had a determining effect on the verdicts of the jury on Counts 1 and 2. Reliance is placed on Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252. That was a prosecution under 18 U.S.C. § 1951 in which the indictment charged obstruction of interstate sand shipments. The sand was to be used in concrete necessary for the construction of a steel processing plant. Evidence was received of the effect on interstate commerce not only of the sand shipments but also of steel shipments from the new plant. The Court in reversing held that the improper evidence of the steel shipments might have been the basis of conviction. We have no such case here. Evidence received in proof of Counts 3 and 4 is so related to proof of the charges made in Counts 1 and 2, particularly in regard to intent and motive, that it falls within the well-recognized exceptions to the rule that evidence of an independent crime may not be received. These exceptions are noted in our decision in Tandberg-Hanssen v. United States, 10 Cir., 284 F.2d 331, 333.

Affirmed.

---

6. Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435.

7. Wiltsey v. United States, 4 Cir., 222 F. 2d 600, 601.

8. Lawn v. United States, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321; Travis v. United States, supra, 269 F.2d at page 937; Marteney v. United States, 10 Cir., 218 F.2d 258, 261.