**UNITED STATES of America,
Appellee,**

v.

**Oscar MITCHELL, Appellant.**

**No. 71–1500.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 9, 1972.

Decided June 30, 1972.

Rehearing Denied July 19, 1972.

---

1. Appellant's Br. at 4.

Louis Gilden, St. Louis, Mo., for appellant.

Jerome J. Murphy, Asst. U. S. Atty., St. Louis, Mo., Daniel Bartlett, Jr., U. S. Atty., Terry I. Adelman, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Melvin L. Wulf, Sanford Jay Rosen, American Civil Liberties Union, New York City, Brief of American Civil Liberties Union, amicus curiae.

Before MATTHES, Chief Judge, VAN OOSTERHOUT, Senior Circuit Judge, and HEANEY, Circuit Judge.

MATTHES, Chief Judge.

Oscar Mitchell appeals from his conviction, after a jury trial, of having violated the Hobbs Act, 18 U.S.C. § 1951[1] by attempting to obstruct interstate commerce through extortion. We affirm.

I

Mitchell was a job developer for the Congress of Racial Equality (CORE) in St. Louis. This prosecution arose from a grievance held by CORE against Mr. T's Rental of St. Louis, a business engaged in the rental and sale of television and phonograph sets primarily in the black community.[2] The substance of CORE's and Mitchell's complaint against Mr. T's was that the latter, because of its financing scheme, collected grossly unjust amounts from its sales. Apparently Mitchell sought to improve the situation by inducing the company to rehire one J. C. Whittington, a black former employee, as manager of its St. Louis store.

After Mitchell had demanded the rehiring of Whittington, there ensued a series of conversations and meetings between various interested parties, including Mitchell, Whittington, and employees of Mr. T's, both managerial and nonmanagerial. The evidence adduced at trial indicates clearly that, in the course of these communications, Mitchell threatened to picket, boycott, advertise against, and sue the company if his demand for a black manager was not met. Further evidence indicates that Mitchell demanded a $1,000 contribution by Mr. T's to the CORE educational fund, although the demand apparently was not accompanied by any expressed threat. Other testimony indicates that when a black deliveryman employed by Mr. T's indicated to Mitchell that he would not honor a request to refuse to work, Mitchell warned him to arm himself. The company's deliverymen apparently were sufficiently frightened by this incident that a company official directed them not to take their trucks out that day. On another occasion, Mitchell stated, with reference to Whittington, "Well, if he don't do what we want him to do, or what we want to do, we'll ship him back to Wichita in a box." During the same meeting, Mitchell also asserted, "Listen, I got enough on all of you, including you, John Gummersell, [attorney for Mr. T's] to put you away for a long time . . . Either you are going to hire J. C. back or everybody here goes to jail." Still other evidence indicates that Mitchell threatened to slash the tires of or burn any company trucks found on the streets, "burn you out of town, put you out

---

1. The statute provides:
   "(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.
   (b) As used in this section

* * * * *

   (2) The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

2. The evidence at trial established that Mr. T's purchases much of its inventory from a manufacturer located in Texas, and that Mr. T's itself operates in more than one state.

of business," and that he threatened to call militant organizations, including the Black Panthers, into the dispute.[3]

Mitchell was indicted, tried and convicted. He contends on appeal (1) that the government failed to establish at trial (a) that interstate commerce had been obstructed, (b) that any threat of physical harm had been made, and (c) that if any threats were made, they were not capable of instilling fear in the minds of reasonable men; (2) that certain evidence was improperly excluded at trial; (3) that the district court erred prejudicially in several aspects of its charge to the jury; (4) that the acts which gave rise to this conviction were shielded by the first amendment; and (5) that the Hobbs Act was not intended by Congress to affect militant civil rights activity.[4]

## II

We consider first Mitchell's various claims that the evidence adduced at trial was insufficient. In this connection, of course, we view the evidence in the light most favorable to the verdict.

Mitchell alleges "a total absence of evidence" which might have demonstrated that his actions threatened the obstruction of interstate commerce. He concedes that Mr. T's bought its inventory from a manufacturer located in another state, but claims that the prosecution failed to demonstrate any immediate interference with interstate transactions or shipments. This argument is untenable. We reiterate the observation of this court, in Hulahan v. United States, 214 F.2d 441, 445 (8th Cir. 1954), cert. denied, 348 U.S. 856, 75 S. Ct. 81, 99 L.Ed. 675, that a Hobbs

Act prosecution may be premised upon ". . . attempted extortion actually or potentially affecting interstate commerce, just as it has power to deal with unfair labor practices so affecting interstate commerce." (Emphasis added.) See also Nick v. United States, 122 F.2d 660 (8th Cir. 1941); Esperti v. United States, 406 F.2d 148, 150 (5th Cir. 1969), cert. denied, Farinella v. United States, 394 U.S. 1000, 89 S.Ct. 1591, 22 L.Ed.2d 777.

Mitchell argues also that the government failed to establish that he had made any threats of physical violence. The record belies this claim. The evidence of threats of physical violence was strong and convincing.

Finally, it is argued that if threats were made, they should have been viewed merely as "strong negotiations" rather than as attempts at extortion. Here, Mitchell submits that the instillation of a rational fear is an essential element of any Hobbs Act violation, that his "strong negotiations" were not capable of instilling such fear, and that the government thus failed to prove its case. As will be discussed infra, we do not agree that the actual generation of fear is a necessary element of every offense contemplated by the Hobbs Act, nor indeed of the attempted extortion charged against Mitchell. But this reservation notwithstanding, we entertain no doubt that the evidence regarding the tenor and effect of the threats made was sufficient to establish the elements controverted by Mitchell.

## III

Mitchell complains next that the district court improperly excluded,

---

3. We glean from the record that originally Mitchell complained that Mr. T's did not have any black employees, but only a lot of "white honkies." But the record shows there were black managers and a total of 8 or 10 blacks working in Mr. T's operation. The dispute finally centered on re-hiring J. C. Whittington, a black former employee. The black employees met with Mitchell at the headquarters of CORE. They returned to Mr. T's after the meeting in a state of fear, refused to take the trucks out and deliver merchandise that day and stated they would not work under J. C. Whittington.

4. Although Mitchell offered several witnesses in an effort to disprove the charge, he personally did not see fit to take the stand and testify. Thus, in the main, most of the treats of violence stand uncontradicted.

on the ground of immateriality, evidence which would have established the furtherance of civil rights as the benevolent motivating force behind the actions giving rise to his conviction. We sustain the action of the district court. It should be noted first that district court judges are vested with broad discretion to determine the relevancy of proposed evidence. Cotton v. United States, 361 F.2d 673, 676 (8th Cir. 1966). More to the point, the law admits of no doubt that motivation, as distinguished from intent, generally is not material to any defense. United States v. Tijerina, 446 F.2d 675, 679 (10th Cir. 1971); United States v. Moylan, 417 F.2d 1002, 1004 (4th Cir. 1969), cert. denied, 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91; Kong v. United States, 216 F.2d 665, 668 (9th Cir. 1954); Collazo v. United States, 90 U.S.App.D.C. 241, 196 F.2d 573, 578–579 (1953), cert. denied, 343 U.S. 968, 72 S. Ct. 1065, 96 L.Ed. 1364.

## IV

We consider next the allegations of error pertaining to instructions.

## PROTECTED SPEECH

One theory advanced by Mitchell is premised on the assumption that some of his communications with Mr. T's and its employees were protected by the first amendment. The contention is made, upon authority of Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969),[5] that, because the jury was not specifically instructed that certain communications were privileged, it is impossible for this court to determine whether the guilty verdict was rendered solely on the basis of behavior falling outside the protective scope of the constitution, and the conviction thus must be reversed.

It is settled, however, that appellate courts must review trial court in-

structions in their entirety in order to determine whether juries have been properly charged. United States v. Leach, 429 F.2d 956, 963–964 (8th Cir. 1970); United States v. Bennett, 428 F. 2d 772, 775 (8th Cir. 1970). In particular, the failure to give a certain requested instruction is not erroneous if the court's charge, as a whole, correctly instructs the jury on the applicable law. United States v. Leach, *supra*, 429 F.2d at 963–964. We have reviewed the instructions here challenged, and it is our conclusion that the jury in this case was effectively directed that a guilty verdict could be based only upon actions and communications clearly outside the ambit of first amendment protection. The jury was charged in part as follows:

> Before you can convict defendant of the offense charged against him, you must find beyond a reasonable doubt that defendant knowingly and willfully threatened force and violence by physical injury to the person of the employees or the property of Mr. T's Rental of St. Louis, Inc., and that defendant attempted to obtain property from Mr. T's Rental of St. Louis, Inc., with its consent induced by the threat of such wrongful force, violence or fear, and unless you so find, you must acquit defendant.

This instruction made it incumbent upon the jurors to convict Mitchell only if he was found to have made violent threats in furtherance of a scheme to extort money. Enactment of Section 1951, obviously intended to further the legitimate congressional interest in freely flowing interstate commerce, properly recognized that such threats are devoid of constitutional protection. *Cf.* Watts v. United States, 394 U.S. 705, 707, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). It is immaterial in this respect that Mitchell may have engaged also in protected speech activity, for such activity could

---

5. In *Street*, a state conviction for burning an American flag was overturned, not because the court objected to the flag-burning prohibition, but because the possibility remained open in that case that the guilty verdict might have been based in part upon behavior which was protected by the first amendment.

not have sanctified his extortionate threats.

### ELEMENT OF INTENT

■ Mitchell argues also that the district court erred prejudicially by instructing the jury, in connection with the element of intent to extort, that "it is fair to assume that an accused intended all of the natural and probable consequences of the acts and words he causes or speaks." In United States v. Green, 246 F.2d 155 (7th Cir. 1957), which also involved a prosecution for attempted extortion in violation of the Hobbs Act, sufficiency of the evidence to prove intent was in question. The court disposed of the matter as follows:

> Clearly, the proof of a general intent to commit the crime charged is a necessary element. Morissette v. United States, 342 U.S. 246 [72 S.Ct. 240, 96 L.Ed. 288] . . . . However, it is axiomatic that a person is held to intend the natural consequences of his acts. The record discloses overt conduct which reasonably constituted threat [sic] of physical violence, which admittedly was designed to force the contractors to hire unnecessary laborers. Defendants must be held to have intended the consequences which would reasonably flow from such conduct.

246 F.2d at 159–160. We think the principle thus enunciated is correct and vindicates the instruction presently in question.

### ELEMENT OF FEAR

Much attention was devoted during oral argument to the failure of the district court to instruct the jury that, in order to convict Mitchell, they would have to find (1) that Mitchell actually had generated fear in the minds of Mr. T's employees and (2) that this fear had been reasonable. Again, we find no basis for reversal.

■ It should be noted first that Mitchell did not properly raise this particular point in his brief,[6] and we are not disposed to have theories raised for the first time during oral argument. Regardless of the procedural deficiency, however, we have examined the merits of Mitchell's argument and have concluded that the instructions actually given, read in their entirety, properly submitted all essential elements of the offense.

### V

■ We come next to Mitchell's contention that some or all of the activity which gave rise to his prosecution and conviction were shielded by the first amendment. Part of this argument has been dealt with in our discussion of the district court's charge to the jury, *supra*.

One first amendment theory, advanced most forcefully in the amicus curiae brief of the American Civil Liberties Union, has not yet been considered. This is the contention that all of Mitchell's utterings were constitutionally sacrosanct, and that any threats of violence were mere "political hyperbole" akin to that vindicated in Watts v. United States, *supra*.

In *Watts*, a conviction for violating 18 U.S.C. § 871(a) by threatening the life of the President was reversed. The prosecution had been based upon the comment of a Selective Service System registrant, at an anti-war rally, that "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J." 394 U.S. at 706, 89 S.Ct. at 1401. Both Watts and his listeners laughed after the statement was made. Id., at 707, 89 S.Ct. 1399. The court concluded that, in view of the "nature of the statement and the reaction of the listeners," no threat within the purview of the statute had been made. Id., at 708, 89 S.Ct. at 1402. Such a conclusion would not be warranted in this case. Here, contradistinct from *Watts,* there was evidence warranting the jury's apparent finding

6. Mitchell did brief his contention that the government failed to establish a submissible case on the suggested "element" of

fear. This point already has been discussed.

that actual threats were communicated directly to their subjects.

## VI

Finally, Mitchell argues that the Hobbs Act has been misapplied in this case, because it was not intended to illegalize militant civil rights activity. We find this contention unpersuasive. When first proposed, the Act was described by its Congressional sponsor in the following terms:

This bill is grounded on the bedrock principle that crime is crime, no matter who commits it; and that robbery is robbery and extortion, extortion, whether or not the perpetrator has a union card. It covers whoever in any way or decree interferes with interstate foreign commerce by robbery or extortion.

89 Cong.Rec. 3217 (1943) (remarks of Representative Hobbs.) *See also* United States v. Green, *supra*, 246 F.2d at 160. It is our conclusion that § 1951 proscribes all forms of extortion which affect interstate commerce.

The judgment of the district court is affirmed.