Jordan **BROWN** and all others similarly situated, Plaintiff,

v.

**FIRST NATIONAL CITY BANK,** Defendant.

No. 72 Civ. 4516.

United States District Court, S. D. New York.

Nov. 7, 1973.

Sheldon V. Burman, New York City, for plaintiff.

Shearman & Sterling, New York City, for defendant by John E. Hoffman, Jr., Joseph T. McLaughlin, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

This is one of two actions brought simultaneously by customers[*] of the defendant First National City Bank challenging the bank's method of calculating interest on Checking Plus accounts. The defendant has moved for summary judgment in both cases; this Court denied one of the motions, finding disputed issues of fact. Rosenspan v. First National City Bank, 72 Civ. 4515 (S.D. N.Y., filed Aug. 23, 1973).

The essence of plaintiff's claim in this case is that the defendant's method of calculating interest on amounts lent to him under the Checking Plus agreement violates the National Bank Act, 12 U.S. C. § 85 and the New York Banking Law § 108(5), McKinney's Consol. Laws, c. 2, in three respects: first, plaintiff challenges defendant's practice of using multiples of one hundred in advancing funds to Checking Plus customers instead of the exact amount indicated by the customer's check; second, plaintiff claims that the defendant charges interest on interest; and third, that it charges interest on service charges. Plaintiff claims that the latter two practices also constitute violations of the Checking Plus agreement which allows interest to

[*] The plaintiff in each case has moved for a class action determination but the parties in both cases have stipulated to postpone consideration of the class action motion until after the court has disposed of the motion for summary judgment.

be charged only on "the amount of credit in use." In its motion for summary judgment the defendant denies using the latter two practices and claims that its practice of using multiples of a hundred is permitted by both State and federal law.

▪ Jurisdiction is properly invoked pursuant to 28 U.S.C. § 1337 and 28 U.S.C. § 1355. Section 1337 confers on the district courts "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce . . ." The National Bank Act clearly regulates commerce. Section 1355 confers exclusive jurisdiction "of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture . . . incurred under any Act of Congress." The plaintiff is suing for recovery of the penalty provided by Section 86 of the National Bank Act. In addition, the state claims stem from a "common nucleus of operative fact", United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), and thus meet the test for pendent jurisdiction.

Following the defendant's motion for summary judgment, the plaintiff cross-moved for partial summary judgment based on the defendant's practice of charging interest on multiples of $100. The plaintiff opposes the defendant's motion for summary judgment on the questions of compounding interest and charging interest on service and maintenance charges, claiming that these questions raise factual issues which should not be resolved on the basis of conflicting affidavits. Finally, as part of his cross-motion plaintiff raises a new issue, claiming that both state and federal statutes are violated by the defendant's failure to credit deposits by plaintiff to his checking account as repayment of loans advanced pursuant to the Checking Plus agreement. With the exception of the question whether the defendant charges interest on service charges, all of these issues can be disposed of by summary judgment.

▪ Plaintiff's first argument centers on the question of whether the charging of interest on multiples of a hundred rather than on the exact amount of the overdraft violates state and federal law. The National Bank Act, 12 U.S.C. § 85 permits a national bank to charge interest up to the maximum rate permitted by the laws of the state where it is located. Here the applicable law is Section 108(5) of the New York Banking Law, which provides that:

"5. (a) A bank or trust company which operates a personal loan department pursuant to paragraph (a) of subdivision four hereof may establish credits under written agreements with borrowers, pursuant to which one or more loans or advances to or for the account of a borrower may be made from time to time, by means of honoring one or more checks or other written orders or requests of the borrower and may charge interest on such loans and advances at the rate permitted by paragraph (b) of this subdivision, provided such loans and advances comply with the provisions of this subdivision."

"(b) Such agreement may provide for interest on the unpaid aggregate principal amount of such loans and advances from time to time outstanding at a rate not in excess of one per centum per month . . . reckoned on each loan or advance from the date thereof . . ."

Under Section 108(5)(a) the bank may charge interest at the rate permitted by Section 108(5)(b) only on loans or advances made "by means of honoring one or more checks or other written orders or requests of the borrower." Under the Checking Plus agreement, if a customer writes a check for which there is an insufficient balance in his checking account, the bank does not merely honor it, but rather advances funds from his Checking Plus account in the multiple of a hundred needed to cover the overdraft. For example, if a customer with a bal-

ance of zero wrote a check for $105, the bank would transfer $200 from his Checking Plus account to his checking account. The $105 would be used to cover the check and his checking account would then show a positive balance of $95. But he would pay interest on $200 until it was repaid. In this case the plaintiff wrote four checks on credit during August 1972, which totalled $701.36, but the bank advanced, and charged interest on, a total of $900. The plaintiff does not claim that this practice violates the Checking Plus agreement; indeed, it is clearly spelled out therein. However, the practice cannot be reconciled with the statutory requirement that loans be made "by means of honoring one or more checks or other written orders or requests of the borrower." Advancing funds in multiples of a hundred dollars does not constitute honoring a check.

Defendant argues that the differences between the amounts of plaintiff's overdrafts and the multiples of one hundred dollars advanced by the defendant were in fact loans, and that therefore the plaintiff has been charged interest only on amounts actually loaned. Defendant's argument implies that it is irrelevant whether or not the plaintiff ever used the entire amount loaned, since the defendant placed the money at plaintiff's disposal by transferring it from his Checking Plus account to his special checking account and thereby earned the right to charge interest on it. Yet under the Checking Plus agreement the money was already at the plaintiff's disposal as credit in the Checking Plus account. It is difficult to see how the mere transfer of money from one account to another can create a right to charge interest on it before it is actually withdrawn by the borrower. Furthermore, by logical extension, the defendant's argument could be used to justify transferring money in multiples of one thousand, if agreed upon by a customer, and charging interest on $1,000, al-

though the customer had only spent $50. In view of the strict public policy underlying usury laws and the carefully drawn language limiting the imposition of interest to amounts loaned "by means of honoring one or more checks or other written orders or requests of the borrower," the defendant's argument is not persuasive.

For these reasons the plaintiff's cross-motion for summary judgment on this issue is granted.

■ The questions next to be considered are whether the defendant charges interest on interest or interest on service charges. These factual questions need not be resolved on conflicting affidavits because the defendant has supplied records of the plaintiff's special checking and Checking Plus accounts. These records, whose accuracy is undisputed, show that the defendant has not charged interest on interest. Had it done so, the interest charged for September 1972 would have been two cents higher, and that charged for October 1972 three cents higher, than the charges actually imposed. The question whether the defendant charges interest on service charges, however, cannot be resolved until the defendant discontinues its practice of charging interest on multiples of a hundred dollars rather than the amount of the overdraft. Summary judgment on this issue must therefore be denied.

The final issue to be resolved on this motion is that of repayment. Under the Checking Plus agreement, advances or loans from the Checking Plus account to the special checking account may not be repaid merely by depositing money in the special checking account. Rather, such payments must be made to the Checking Plus account, "accompanied by a properly completed payment ticket (enclosed with the monthly Checking Plus Statement) or by any other properly completed form of notice of prepayment authorized by the Bank . . ." Thus it is possible for a customer to

have a positive balance in his special checking account larger than the debt in his Checking Plus account and still pay interest on the entire debt.

■ The plaintiff claims that this practice violates Sections 108(5)(d) and (f) of the New York Banking Law and results in his paying interest higher than the maximum allowable rate. Section 108(5)(d) states:

"(ii) The borrower may at any time prepay the amount owing in part or in full, with interest to the date of pre-payment."

Section 108(5)(f) provides in relevant part that:

"(f) No bank or trust company shall require a borrower to keep any sum on deposit, or to make deposits in lieu of regular periodic installment payments, or to do or refrain from doing any other act which would entail additional expense or sacrifice, as a condition precedent to the entering into of the agreement or granting of a loan or advance under the authority of this subdivision . . ."

Notwithstanding the plaintiff's objections, neither of these sections is contravened by the payment provisions of the Checking Plus agreement. There is nothing in the agreement or the defendant's practice to prevent a customer from making payments to the Checking Plus account as opposed to the special checking account. Although admittedly customers might find it more convenient to repay their loans by making deposits in their checking accounts rather than having to make special payments to their Checking Plus accounts, the statute does not confer any legal right to such convenience. The requirement that payments be made to one account rather than the other does not "entail additional expense or sacrifice" of the kind referred to in the statute. The defendant is therefore entitled to judgment on this final issue.

Settle order on notice.