UNITED STATES of America, Plaintiff,

v.

Ken Richard BRYSON, Defendant.

Crim. No. 75–70.

United States District Court,
W. D. Oklahoma.

April 21, 1975.

On Motion for New Trial May 21, 1975.

William R. Burkett, U. S. Atty., by John E. Green and O. B. Johnston, III, Asst. U. S. Attys., Oklahoma City, Okl., for plaintiff.

Don Hamilton, Phillip E. Lambert, Oklahoma City, Okl., for defendant.

## ORDER

DAUGHERTY, Chief Judge.

The above Defendant has filed herein a Motion For Disclosure Of Electronic Sur-

veillance, For Pre-Trial Hearing To Suppress Evidence And To Dismiss The Indictment. A Brief supports the Motion. The Plaintiff has responded thereto with Brief. The Court has conducted an evidentiary hearing on that part of the Motion seeking Disclosure and to Suppress Evidence.

In its Response the Plaintiff asserts that the results of all electronic surveillance of the Defendant conducted by it have been furnished the Defendant. This appears to involve three recorded telephone conversations between Defendant and one Leslie Gail Jeffreys. The Court assumes from what transpired at the evidentiary hearing that the Defendant is satisfied with such furnishing of the results of these three recorded telephone conversations. If this assumption is not correct, the Defendant should advise the Court in writing not later than April 23, 1975. The Court notes from the evidentiary hearing conducted herein that Special Agent Elroy of the Federal Bureau of Investigation testified that as far as this case is concerned only said three telephone conversations were recorded. He did testify that he had knowledge of prior tape recordings of the Defendant which, however, had nothing to do with this case and which were made apparently by the City Manager of Shawnee. The Court will assume that the Defendant is satisfied that any such tape recordings of Defendant made by someone other than the Plaintiff and reportedly having no connection with the crime charged in this case are not relevant to this case as the Defendant did not pursue this disclosure or make any request in connection therewith at the evidentiary hearing. If Defendant should feel otherwise, the Court is agreeable if such tapes can be obtained to make an in camera inspection thereof to ascertain if they have any relation to this case. If the Defendant is inclined in this direction he should notify the Court in writing herein on or before April 23, 1975. Otherwise, the Court will indulge in the assumption above made.

The Plaintiff further asserts in its Response that there are no applications, affidavits, memoranda or other papers in connection with recording said three telephone conversations as they were recorded with the prior consent of the said Leslie Gail Jeffreys who was on one end of the telephone line on each occasion with the Defendant on the other end of the line. On this basis, there is nothing to disclose or furnish by Defendant in this respect.

The Court therefore finds and concludes, subject to the foregoing assumptions, that Plaintiff has made the required disclosure and that Defendant is satisfied therewith.

In said Motion Defendant also requests the Court to suppress all evidence illegally obtained by the Plaintiff by means of electronic surveillance of the Defendant. Defendant further requests that the Indictment be dismissed if the Plaintiff illegally obtained evidence against the Defendant.

*Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 226, 84 L.Ed. 307 (1939) holds that testimony obtained from intercepted telephone messages in violation of Section 605 of the Federal Communications Act, 47 U.S.C. § 605,[1] is inadmissible and should be suppressed as evidence on motion. The case of *Rathbun v. United States,* 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957) holds that there is no violation of 47 U.S.C. § 605 if a telephone interception is done with the consent of one party to the telephone conversation.

Congress in 18 U.S.C. § 2511 appears to have codified the ruling of *Rathbun* by providing in legislation that:

"(2) * * * (c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

(d) It shall not be unlawful under this chapter for a person not acting under

---

1. In pertinent part this Section provides that:
   ". . . 'no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.'"

color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted . for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act."

*Nardone, supra,* also provides that a defendant in a criminal case who asserts that evidence against him was improperly obtained by wire tapping has the burden of proving to the trial court's satisfaction the truth of the assertion. Our Circuit in *Nolan v. United States,* 423 F.2d 1031 (Tenth Cir. 1970) had occasion to treat with the procedure and the burden of proof in a case in which it was alleged that evidence had been obtained by the Government by illegal wire tapping. It was held in *Nolan, supra,* that after inspecting the recordings and transcripts of alleged illegal electronic surveillance, the burden was on the defendant to prove that illegal electronic surveillance of himself had occurred and then the ultimate burden of persuasion against illegality and taint was on the Government and at the same time defendant was required to go forward with specific evidence demonstrating illegality and taint.

The Defendant appears to claim with reference to his Motion To Suppress that the evidence obtained by electronic surveillance of him was illegally obtained by the Government only on the basis that the said three recorded telephone conversations were for the purpose of the said Leslie Gail Jeffreys committing a criminal or tortious act or some other injurious act and hence a violation of 18 U.S.C. § 2511(d), *supra.*

The Defendant presented no evidence of a direct[2] 47 U.S.C. § 605 violation. The Court finds and concludes therefore that no evidence has been presented to show a direct 47 U.S.C. § 605 violation.

The evidence discloses and the Court finds that the three telephone conversations which were recorded were between the Defendant and Leslie Gail Jeffreys; that Leslie Gail Jeffreys gave prior consent to the three telephone conversations being monitored and recorded; that she signed a written consent to this effect; that such consent was not obtained by the Government by means of any promises, force, threats or coercion practiced on the said Leslie Gail Jeffreys for the same; that her consent was freely, voluntarily and intelligently given; that the owner of the telephone involved likewise gave prior consent to it being used, monitored and recorded as used by said Leslie Gail Jeffreys. The Court finds and concludes that the prior consent contemplated by 18 U.S.C. § 2511(2)(c) and (d) has been shown by the evidence without dispute regarding said three· recorded telephone conversations between Defendant and Leslie Gail Jeffreys.

There was no evidence presented to the Court that in the use of said telephone by the said Leslie Gail Jeffreys regarding the said three recorded telephone conversations that she used the same and allowed the recordings therefrom for the purpose of committing a criminal or tortious act or any other injurious act. The Defendant has failed to submit any evidence in support of his contention to this effect and has failed to meet his burden in this regard.

The Court therefore finds and concludes that the recordings made of the three telephone conversations involved were not illegally made or illegally obtained by the Plaintiff and should not be suppressed as evidence in the case but should be admitted as evidence in the case under appropriate instructions to .the jury. The Motion of Defendant that the Indictment herein be dismissed because of illegally obtained evidence is denied for there has been no showing made either in the pleadings or in the evidentiary hearing conducted herein that

---

2. By a direct violation is meant an interception accomplished without the consent of either party to the conversation.

the Indictment was based upon illegally obtained evidence.

The Motions to Suppress Evidence and To Dismiss are overruled this 21 day of April, 1975.

## ON MOTION FOR NEW TRIAL

The above Defendant after being convicted by a jury of the crime of extortion (18 U.S.C. § 1951) has filed a Motion For New Trial with supporting Brief. The Plaintiff responds in opposition thereto. Nine numerical grounds are asserted in the Motion and others are discussed in the Brief. None are believed to be meritorious as hereinafter indicated and the Motion should be overruled.

## GROUND 1

THE COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO DISMISS AT THE CLOSE OF THE GOVERNMENT'S EVIDENCE AND AT THE CONCLUSION OF ALL THE EVIDENCE.

This Ground is related to Ground 2 as the Motion To Dismiss under consideration should have been embraced within Defendant's Motion For Judgment Of Acquittal under Rule 29, Federal Rules of Criminal Procedure as a trial motion.

■ However, in discussing this Ground the evidence showed jurisdiction in this Court of the offense. There was no claim of an inadequate Indictment, jeopardy or a bar of limitations. The Government's evidence established each of the essential elements of the offense involved and was sufficient to sustain a conviction. This evidence revealed that the Defendant induced one of his victims to co-sign or guarantee a $10,000.00 note in connection with a bank loan and induced his other victim to part with an $8,000.00 check (certainly the Defendant attempted to do so); that the above was accomplished by the Defendant by extortion in that be obtained such guarantee and check from his victims with their consent but induced by Defendant's threat to kill one of his victims unless the money

was obtained from the bank through a loan co-signed by one of the victims; that commerce was affected by Defendant's actions as aforesaid and that the Defendant acted knowingly and wilfully in the commission of this offense.

The written Motion To Dismiss filed by Defendant at the close of the Government's evidence was based on Defendant's contention that the Government had failed to prove an obstruction or delay in interstate commerce; that Huff was not employed by the bank and that the Government failed to prove the element of fear. The Court overruled this Motion. These three contentions are separately stated by the Defendant as grounds for a new trial in his Motion under consideration and will be shown to be without merit as discussed under Grounds 5, 6, 7, 8 and Other Ground 1, *infra*.

In these circumstances the case was properly submitted to the jury for its verdict and Defendant's Motion To Dismiss was properly overruled.

## GROUND 2

THE COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL MADE AT THE CLOSE OF THE GOVERNMENT'S EVIDENCE AND AT THE CONCLUSION OF ALL THE EVIDENCE.

■ This Ground is essentially the same as Ground 1, *supra*. Rule 29, Federal Rules of Criminal Procedure provides for such motions and the granting thereof if the evidence is insufficient to sustain a conviction of the offense charged. In considering such a motion the evidence and the inferences therefrom are viewed by the Court most favorably to the prosecution. In *United States v. Tager,* 481 F.2d 97 (Tenth Cir. 1973), cert. den. 415 U.S. 914, 94 S.Ct. 1410, 39 L.Ed.2d 469, the Court stated:

"In reviewing the district court's refusal to direct a verdict of acquittal, this court must determine whether, viewing the evidence in a light most favorable to

the prosecution, there was substantial evidence, together with reasonable inferences drawn therefrom, that would sustain the verdict."

Also, see *Cartwright v. United States,* 335 F.2d 919 (Tenth Cir. 1964). As shown under Ground 1, *supra,* the evidence viewed in the light most favorable to the Government was sufficient to sustain a conviction of the offense charged.

In these circumstances the Motions were properly overruled by the Court and the case was properly submitted to the Jury for its verdict.

## GROUND 3

THE GUILTY VERDICT OF THE JURY IS CONTRARY TO THE WEIGHT OF THE EVIDENCE AND IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

As shown under Ground 1, *supra,* and supplemented by the Defendant's own testimony which essentially did not dispute the Government's case but was generally to the effect that one of the victims was obligated to him for the amount of money involved because he had had sexual relations with his daughter and was the cause of her incurring a large number of bills, the guilty verdict is not contrary to the weight of the evidence and is supported by substantial evidence.

## GROUND 4

THE COURT ERRED IN EXCLUDING CERTAIN HEARSAY EVIDENCE.

█ The Defendant cites no authority in his Brief in Support of this Ground. It is sufficient to state that the Defendant desired to have a witness (George Snider) testify as to what two other persons told him in a conversation in which neither the Defendant nor a Government agent was present. In the proper exercise of its discretion the Court excluded this evidence as hearsay on objection to the same from the Plaintiffs.

## GROUND 5

THE COURT ERRED IN ITS INSTRUCTION TO THE JURY IN WHICH "COMMERCE" WAS DEFINED.

18 United States Code § 1951 provides in pertinent part:

"(a) Whoever in any way or degree obstructs, delays, or affects commerce . . . by . . . extortion or attempts or conspires so to do, . . . shall be (fined or imprisoned).

(b) As used in this section—

\* \* \* \* \* \*

(2) The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, . . .

(3) The term 'commerce' means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; *and all other commerce over which the United States has jurisdiction.*" (Emphasis supplied)

The Court's instruction involved in this Ground reads:

"*COMMERCE—DEFINED*

One of the essential elements of the offense charged herein is that 'commerce' was obstructed, delayed or affected by the acts charged therein.

In this connection, you are instructed that 'commerce' includes all commerce over which the United States has jurisdiction. In this regard, you are instructed that banks organized and operating under the National Bank Act are within the jurisdiction of the United States.

You are further instructed that the Federal National Bank of Shawnee, Oklahoma is organized and chartered pursuant to the National Bank Act."

Defendant urges that the Court erred in instructing that a bank operating under the

National Bank Act was an entity over which the United States has jurisdiction. Defendant relies on cases which hold that the fact that a bank is organized under the National Bank Act does not establish federal jurisdiction. The Court must note that the relevant portion of the statute in question does not require that such jurisdiction be exclusive. In this regard, federal jurisdiction has been found to be established under the National Bank Act pursuant to 28 U.S.C. § 1337. This jurisdictional statute provides:

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any *Act of Congress regulating commerce* . . ." (Emphasis supplied).

Cases which have held that the National Banking Act is an act regulating commerce include: *Cupo v. Community National Bank & Trust Co. of N. Y.,* 438 F.2d 108 (Second Cir. 1971); *Partain v. First National Bank of Montgomery,* 467 F.2d 167 (Fifth Cir. 1972); and *Brown v. First National City Bank,* 365 F.Supp. 1286 (S.D.N.Y.1973).

In *United States v. Greiser,* 502 F.2d 1295 (Ninth Cir. 1974) a Hobbs Act conviction which involved extortion from the branch manager of a National Bank was upheld. This Court is of the opinion that the National Bank Act is an act of Congress which regulates commerce and thus the activities and operations of a bank chartered under said Act would be included in the Hobbs Act definition of "all commerce over which the United States has jurisdiction." It is therefore believed that the commerce of the National Bank involved in this matter is commerce over which the United States has jurisdiction within the meaning of "commerce" as defined in 18 U.S.C. § 1951.

In this connection it is appropriate to observe that this statute uses the term "commerce" and not the term "interstate commerce", though interstate commerce is specifically included in the definition of commerce. "Commerce" therefore as used in this statute embraces interstate commerce and something less than interstate

commerce. This interpretation of the statute and the above instruction of the Court are believed to be correct under the law and evidence in this case.

## GROUND 6

THE COURT ERRED IN ITS INSTRUCTION TO THE JURY ABOUT THE MEANING OF COMMERCE BEING AFFECTED.

This instruction reads:

"Either actual or potential affect on commerce by extortion or attempted extortion is sufficient. It is not necessary to show an actual interruption or delay in commerce. It is not necessary that the purpose of an extortion or attempted extortion be to affect commerce but only that one of the natural effects thereof be to obstruct, delay or affect commerce.

The commerce of a National Bank may be affected when its resources are diminished actually or potentially as the result of payments of money obtained by extortion or attempted extortion. It is only required that the extortion or attempted extortion did in some way or in some degree, though small by most standards, obstruct, delay or affect commerce."

This instruction was drawn by the Court after considering several cases construing the question of what constitutes an affect on commerce under the Hobbs Act. Among the cases so considered were *United States v. Mitchell,* 463 F.2d 187 (Eighth Cir. 1972) and *Hulahan v. United States,* 214 F.2d 441 (Eighth Cir. 1954), cert. den. 348 U.S. 856, 75 S.Ct. 81, 99 L.Ed. 675, both of which held said Act includes a prosecution premised upon *attempted extortion actually or potentially* affecting commerce. Also *United States v. Augello,* 451 F.2d 1167 (Second Cir. 1971) which holds:

". . . Given the sweeping power of Congress under the commerce clause, *Katzenbach v. McClung,* 379 U.S. 294, 305, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964), particularly evident in the Hobbs Act, *Stirone v. United States,* 361 U.S. 212, 215, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), it

is enough that the extortion 'in any way or degree,' 18 U.S.C. § 1951(a), affects commerce, though its effect be merely potential or subtle. *United States v. Tropiano*, 418 F.2d 1069, 1076–1077 (2d Cir. 1969), cert. denied, *Grasso v. United States*, 397 U.S. 1021, 90 S.Ct. 1258, 25 L.Ed.2d 530 (1970); *Hulahan v. United States*, 214 F.2d 441, 445 (8 Cir.), cert. denied, 348 U.S. 856, 75 S.Ct. 81, 99 L.Ed. 675 (1954)."

The case of *United States v. Addonizio*, 451 F.2d 49 (Third Cir. 1972) held that it is not necessary to show that the *purpose* of an extortion was to affect commerce, but only that one of the natural effects thereof would do so. *United States v. DeMet*, 486 F.2d 816 (Seventh Cir. 1973) states that the effect need only be *de minimis* or *small by most standards* citing a long line of cases so holding. *DeMet, supra,* also discusses a *diminishing actual or potential of assets*, as providing the required effect on commerce. *Addonizio, supra,* also holds that the required affect on commerce is met by resources being diminished.

Each sentence of this instruction is supported by case law and each sentence is supported by evidence presented by the Government. It is therefore believed not to be an erroneous instruction and to have been properly given in this case.

### GROUND 7

THE COURT ERRED IN NOT GIVING A REQUESTED INSTRUCTION OF THE DEFENDANT.

This requested instruction reads:

"You are further instructed that if the extortion is successful and no effect on interstate commerce materializes, the extortioner has not violated the Hobbs Act and the commerce element of the Hobbs Act has not been established."

The Court instructed the jury that the Government had the responsibility to prove four essential elements beyond a reasonable doubt in order to establish the offense charged in the Indictment. These four essential elements were stated to be:

"FIRST: That the accused induced his victim or victims to part with money or property in the form of money or attempted to do so;

SECOND: That he did so by 'extortion' as that term has been defined in these instructions;

THIRD: That in doing so, commerce was delayed, obstructed or affected; and

FOURTH: That in doing so, the accused acted knowingly and willfully."

Thus, the jury was instructed by the Court that "commerce" must have been delayed, obstructed or affected and that this was an essential element of the offense charged. The requested instruction required that "interstate commerce" be affected. As shown above the affecting of "interstate commerce" is not essential with reference to this charge. It is sufficient if "commerce", as defined in the statute, is affected. The requested instruction was given in substance in the Court's instructions except for the requirement that there be a finding of the involvement of "interstate commerce" as opposed to "commerce".

### GROUND 8

THE COURT ERRED IN THE MATTER OF INSTRUCTING ABOUT FEAR.

The Court gave the following instruction to the Jury:

"*ACTUAL OR THREATENED FORCE, VIOLENCE OR FEAR—DEFINED*

The terms actual or threatened force, violence or fear as used in these instructions are to be understood in their commonly accepted meaning.

Fear is a state of anxious concern, alarm or apprehension of anticipated harm. It does not necessarily refer to physical fear or fear of violence. It includes fear of economic loss. It is necessary that the jury find that by threats of force or violence fear was created in the victim's mind; that in the circumstances it was reasonable for the victim to have such fear and that the Defendant made use of such fear to extort or attempt to extort money."

■ The Court's instruction as given above covered in substance the requested instruction of the Defendant regarding the role of fear in this offense. The Court followed the cases cited by Defendant in support of his requested instruction. The instruction given was drawn by the Court on definitions contained in the following authorities and cases:

Black's Law Dictionary, Fourth Edition; Webster's Third New International Dictionary; United States v. Critchley, 353 F.2d 358 (Third Cir. 1965) which held that in a Hobbs Act case the fear involved must be a reasonably induced fear and fear may manifest itself by making the payment demanded; United States v. Mitchell, supra, which held that generation of actual fear is not necessary in proving every Hobbs Act offense; and Callahan v. United States, 223 F.2d 171 (Eighth Cir. 1955) which found that if such fear was created in the victim's mind, that same was reasonable, and such fear was used by the extortionist, that the fear element of the Hobbs Act was met.

Defendant's requested instruction in this regard was given in substance by the Court. The Court defined fear and instructed that fear must have been created in the victim's mind. Victim Huff testified that this was so,[1] it appears that it was reasonable for the victim to have such fear in the circumstances of this case and the evidence indicated that the Defendant made use of such fear to extort or attempt to extort money.

### GROUND 9

THE COURT ERRED IN DENYING DEFENDANT'S REQUESTED INSTRUCTION THAT SPECIFIC INTENT AS OPPOSED TO A GENERAL OR CRIMINAL INTENT IS NECESSARY REGARDING THIS OFFENSE.

Defendant during the trial when the instruction on specific intent was requested relied on the case of United States v. Ned-

ley, 255 F.2d 350 (Third Cir. 1958) which case he also relies on in support of the instant Motion. Said case involved the "robbery" portion of the Hobbs Act and the Court in said case noted that specific intent was an element of "robbery". The element of the Hobbs Act involved in the instant case is the "extortion" portion of same which is distinct from the "robbery" portion. Another case also relied on by Defendant in both instances is United States v. Sweeney, 262 F.2d 272 (Third Cir. 1958) which case holds that extortion is a larceny-type offense and that criminal intent is necessary. This Court in considering these cases in relation to the extortion charge herein concluded that the requested instruction of a specific intent was not proper. The Court did give the general or criminal intent instruction and believes this is the only type intent involved in this extortion charge. Said instruction conforms to definitions of criminal intent contained in Cummings v. United States, 289 F.2d 904 (Tenth Cir. 1961); cert. den. 368 U.S. 850, 82 S.Ct. 83, 7 L.Ed.2d 48; Van Nattan v. United States, 357 F.2d 161 (Tenth Cir. 1966); and United States v. Mecham, 422 F.2d 838 (Tenth Cir. 1970).

■ 18 U.S.C. § 1951 does not contain the word "intent" therein much less "specific intent". The Court agreed, however, that this is a criminal intent type offense and therefore gave the criminal intent instruction. But, the Court finds no requirement of a specific intent to do or not to do anything in either the statute or the case law when the "extortion" part of the statute is charged. In United States v. Gupton, 495 F.2d 550 (Fifth Cir. 1974) it is held:

". . . That proposition in turn rests upon the notion that a specific intent to obstruct commerce is a necessary element of a § 1951(a) plan. That is not the case. It is settled law that to prove a crime

---

1. This witness testified that he co-signed the note as he was not going to take any chances; that he was afraid something might happen to him or his family.

under the first clause of § 1951(a),[2] the government need not show that the accused set out with the specific conscious purpose or desire to obstruct commerce."

"[2] 'Whoever . . . obstructs . . . commerce . . . by . . . extortion . . . shall be fined . . . or imprisoned . . . or both.' ".

## OTHER GROUNDS

1. The defendant did not enumerate as a ground for a new trial an alleged fatal variance between the Indictment and the evidence in his Motion For New Trial. However, Defendant appears to claim a fatal variance in his brief in support of his Motion For New Trial. The fatal variance is said to be, (1) the Indictment alleges the Defendant obtained $10,000.00 from his victims, whereas, the evidence shows he received $8,000.00, (2) the Indictment alleges that Huff was employed by the bank, whereas, the evidence shows he was not, in fact, an employee of the bank, and (3) the Indictment alleges Huff would obtain a loan application and co-sign the same with the Defendant, whereas, the evidence shows they signed and co-signed a promissory note to the bank.

As to (1), *supra,* the evidence shows that the Defendant's scheme was to obtain $10,000.00 from his victims with $2,000.00 thereof to be paid in cash to the person he utilized to communicate his demand and threat to his victims and $8,000.00 to be paid or credited to him. The document signed by the Defendant and co-signed by Huff was a promissory note to the bank for $10,000.00. In *Rathbun v. United States,* 236 F.2d 514 (Tenth Cir. 1956), affirmed 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 an indictment in an extortion case stated 100,000 shares of stock were involved, whereas, the proof showed that 120,000 shares were involved. The Court held this was an immaterial variance and would be disregarded. Thus, there was evidence to support a scheme to obtain $10,000.00 from the victims and moreover, even if there were not such evidence involving the $10,000.00 figure the variance between $10,000.00 and $8,000.00 would be disregarded.

As to (2), *supra,* the evidence discloses that Huff was not an officer or director of the bank but that he did industrial relations work for the bank on a retainer, had an office in the bank and his only source of income for this work came from the bank. There was no allegation in the Indictment that Huff was an officer or director of the bank. Only that he was employed by the bank. In *Westover v. Stockholders Publishing Company,* 237 F.2d 948 (Ninth Cir. 1956) it was held:

" . . . Those persons are 'employees' who, as a matter of economic reality, are dependent upon the business to which they render service."

The evidence is sufficient to identify Huff as being employed by the bank or having employment status with the bank and there is no variance, certainly not a fatal variance in these circumstances.

As to (3), *supra,* the Defendant signed and Huff co-signed as a guarantor a printed form of the bank which bears no title but which is in substance a promissory note to the bank. In the Indictment and in Defendant's demand and threat he allegedly mentioned a loan application, the purpose of which obviously would be to obtain $10,000.00 from the bank. It is normal that a loan application, if approved, would be followed by a note. The evidence reveals the note in the specified amount of $10,000.00. The same was signed as alleged by the Defendant and co-signed by Huff. It is well recognized that the law is not concerned with titles but with substance. Hence, the allegation in the Indictment of a loan application for $10,000.00 to be signed by the Defendant and co-signed by Huff and the evidence showing a note for $10,000.00, it being signed by the Defendant and co-signed by Huff is not a fatal variance.

In *Rathbun v. United States, supra,* it is said:

" . . . The law is well established that only substantial variance between allegations and proof affects a defendant's rights and that immaterial varia-

tions will be disregarded. All that is required is that the indictment be so framed that the accused is definitely informed of the charges against him and can prepare his defense and not be taken by surprise by the evidence offered at the trial."

In *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) it is stated:

"The true inquiry, therefore, is not whether there has been a variance of proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense."

\* \* \* \* \* \*

"In *Washington & Georgetown R. Co. v. Hickey,* 166 U.S. 521, 531, 17 S.Ct. 661, [665], 41 L.Ed. 1101, 1104, this court said that 'no variance ought ever to be regarded as material where the allegation and proof substantially correspond, or where the variance was not of a character which could have misled the defendant at the trial.' This was said in a civil case, it is true, but it applies equally to a criminal case if there be added the further requisite that the variance be not such as to deprive the accused of his right to be protected against another prosecution for the same offense."

The Court is satisfied that a fatal variance is not present in this case as to any or all of the three assertions made by Defendant in this regard. The Defendant was definitely informed by the Indictment of the charge against him, he could prepare his defense, he was not taken by surprise and he is amply protected against another prosecution for the same offense. He does not claim to the contrary. This complaint of Defendant is purely technical.

2. The Defendant did not enumerate as a ground for a new trial a failure of Plaintiff to show that "interstate commerce" was obstructed, delayed or affected. However, Defendant in his brief states that the Government, ". . . totally failed to prove an obstruction or delay in interstate commerce". Defendant then engages in a dissertation that the promissory note and the $8,000.00 had no effect on "interstate commerce". This complaint of the Defendant is not well taken for the simple reason that 18 U.S.C. § 1951 does not require that "interstate commerce" must be obstructed, delayed or affected. The statute only requires that "commerce" be obstructed, delayed or affected. As heretofore shown 18 U.S.C. § 1951 involves "commerce" not "interstate commerce" though the latter is included in "commerce". But "commerce" within the meaning and reach of the statute can be something other than "interstate commerce" as is the case here when the "commerce" of a nationally chartered bank was found to have been affected by the extortionate demands and threats of the Defendant directly involving said bank.

As none of Defendant's grounds (enumerated and not enumerated) for a new trial are with merit and as new trials are not favored in the law [2] Defendant's Motion For A New Trial should be overruled.

---

2. See *United States v. Costello,* 255 F.2d 876 (Second Cir. 1958), cert. den. 78 S.Ct. 1385, 357 U.S. 937, 2 L.Ed.2d 1551, reh. den. 79 S.Ct. 16, 358 U.S. 858, 3 L.Ed.2d 93; *United States v. Johnson,* 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562; *Weiss v. United States,* 122 F.2d 675 (Fifth Cir. 1941), cert. den. 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550; *United States v. Mayersohn,* 452 F.2d 521, 536 (Second Cir. 1971) and *United States v. Trudo,* 449 F.2d 649, 653 (Second Cir. 1971).